IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIAM BARRIER ROBERTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-83442-CRJ11 |
| ) | |
| MELANIE HAMMER MURRAY and ) | AP No. 19-80017-CRJ |
| RHETT MURRAY, ) | |
| ) | |
| Defendants. ) | |

## RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Plaintiff William Barrier Roberts ("Roberts") hereby responds in opposition to the Defendants' Motion to Dismiss (the "Motion"). For the reasons stated below, the Court should deny the Motion as to Counts One through Four of the Complaint ("Compl.").

### I. FACTS

Roberts incorporated Bullet & Barrel, Inc. in Alabama on August 5, 2016, for the purpose of establishing and operating an indoor shooting range and training facility in Huntsville. Compl., ¶ 9. Roberts was the sole shareholder of such corporate entity. Id., ¶ 9.

Bullet & Barrel, Inc. was converted into a limited liability company, Bullet & Barrel, LLC ("B&B"), by Statement of Conversion dated and filed on or about April 19, 2017. Id., ¶ 10. As reflected on the Alabama Secretary of State's Business Entity Record for B&B, the nature of B&B's business remains to "operate indoor shooting range/training facility." Id.

At about the same time, namely, on or about April 19, 2017, Roberts and Melanie Hammer Murray ("M. Murray") became B&B's minority Member and majority Member, respectively, and

entered into a limited liability company agreement for B&B effective as of August 5, 2016. Id. at ¶ 11. A true and correct copy of that agreement is exhibited to the affidavit of M. Murray filed in support of the Motion. See Motion, Exhibit A (M. Murray affidavit), Exhibit 1 ("B&B Agreement.").[1] Defendant Rhett Murray ("R. Murray") is M. Murray's spouse, a guarantor of B&B's construction debt and source of funds for M. Murray's "capital contributions" and "loans" to B&B. Compl., ¶ 3.

B&B purchased land on which to construct its facility from a related entity, Roberts, LLC, the Members of which are Roberts and M. Murray. Id., ¶ 12. B&B owns and operates an indoor shooting range and associated goods shop in that facility located in Huntsville. Id., ¶ 4.

M. Murray has engaged in a course of conduct intended to oppress Roberts in his capacity as the minority, non-controlling Member of B&B, and to squeeze Roberts out of B&B by, among other things, the following:

M. Murray abandoned the business plan for B&B, to the extent it provided for the operation of the gun range and provision of related services and equipment as its "backbone," in favor of endeavoring to market and operate B&B as "Huntsville's largest independently owned apparel store"/"Huntsville's largest boutique," including intentionally or recklessly over-investing in high-end women's apparel unrelated to firearms and gun range activities. Id., ¶ 15. Predictably, this intentional or reckless hijacking of the enterprise prompted the following response of, on information and belief, one of B&B's predominantly male members: "Apparel?! I want to shoot!" Such response was contained on M. Murray's Facebook page until it recently was stripped of all postings containing photographs and information concerning the aforementioned apparel. Id.

---

[1] Reference to "Member" or "Members" with capitalized first letters throughout the B&B Agreement refer to those persons who hold membership interests in B&B. See, e.g., B&B Agreement, § 2.1, Section 6, and Exhibit B thereto at B-2 ("Member" definition). The same conformance is used in this Opposition.

2

M. Murray recently also has been seeking to dispose of B&B's excessive inventory of women's apparel through consignment shops and sales advertised most recently as "below costs," following steeply discounted sales. Id., ¶ 16.

On multiple occasions, subsequent to initial capital contributions, M. Murray has required Roberts to further fund B&B to defray operational expenses of B&B that nevertheless went unpaid as a consequence of her financial mismanagement. Id., ¶ 17. M. Murray then expressly predicated some additional requests for funding from Roberts to pay those same B&B expenses. Id. Most recently, M. Murray made formal capital calls to Roberts that were based, in part, on some of those same expenses. Id.

On information and belief, M. Murray also utilized funding received from Roberts to pay for excessive purchases of apparel that she made unilaterally and regularly. Id., ¶ 18. On information and belief, M. Murray began purchasing apparel in approximately June 2017 – more than ten months before B&B opened the range, and continued thereafter rather than pay certain critical operating expenses, such as amounts owed for purchases of firearms, for which Roberts provided such funding. Id. On information and belief, M. Murray's initial apparel purchases were made without disclosure to Roberts and later claimed by her as part of her initial capital contributions, also without disclosure to Roberts. Id. M. Murray repeatedly made such apparel purchases against the advice not only of Roberts and B&B's bookkeeper, but also B&B's certified public accountant ("CPA"). Id.

M. Murray also unilaterally entered into costly and poorly sequenced advertising contracts for B&B, some before B&B had opened for business, and, upon information and belief, at least some of which was vanity promotion for herself. Id., ¶ 19. Such advertising also was purchased despite the objections of Roberts, and both B&B's bookkeeper and CPA. Id.

3

Following M. Murray's repeated efforts to undermine Roberts' authority as an officer of B&B with its employees, consultants and prospective customers, M. Murray retaliated against Roberts by unilaterally terminating his employment with B&B for his questioning of her management decisions. Id., ¶ 20. M. Murray has instructed B&B's CPA to refrain from providing to Roberts certain information and documents that he has requested for the legitimate purpose of remaining informed concerning the operations of B&B, of which he remains a Member owning forty-nine percent (49%) of the membership interest, and officer, albeit stripped of all authority as such by M. Murray. Id. M. Murray also has excluded Roberts from the B&B facility. Id.

M. Murray has failed to heed the advice of B&B's CPA to reduce a sizeable B&B payroll, even increasing it after her termination of Roberts' employment (for which he had been paid no compensation and provided no benefits, despite working for B&B full time), and despite continuing, monthly net operating losses. Id., ¶ 21. Moreover, In late October 2018, M. Murray unilaterally instructed B&B's CPA to "reclassify" any funds paid during 2018 into B&B by Roberts and her "as capital contributions," in order to disguise the recent, formal capital calls she made as part of a plan to effectuate dilution of Roberts' interest in B&B or obtain his interest for little or nothing. Id., ¶ 23.

Upon information and belief, M. Murray engaged in the aforementioned financial mismanagement of B&B intentionally in order to place the company in a financially distressed condition as a pretext for insisting upon additional financial contributions to the business by Roberts by means of capital calls in October 2018, in response to which she herself failed to make capital contributions proportionate to her membership interest in B&B. Id., ¶ 22. M. Murray has done so in an effort to either dilute Roberts' membership interest in B&B or to coerce him into a "fire sale" buyout of his interest in B&B. On information and belief, M. Murray has engaged in

4

such conduct in concert with her spouse, R. Murray, who, upon information and belief, has aided and abetted her *by furnishing the funds for her capital contributions and loans to B&B, and who was knowledgeable concerning and otherwise complicit with M. Murray's aforesaid financial mismanagement of B&B*, to the detriment of Roberts, *whom R. Murray has referred to as his "partner."* Id. (italics added for emphasis). On information and belief, R. Murray has *obtained preferential payments from B&B classified as M. Murray loan balance reductions, and an M. Murray capital account balance reduction labeled "Reimbursement For Fixture."* Id. (italics added for emphasis).

## II. ARGUMENT AND CITATION OF AUTHORITIES

A. **Roberts' Claims for Breach of Fiduciary Duties (Count One of the Complaint) and Minority Oppression/Squeeze-Out (Count Two of the Complaint) are Viable as a Matter of Alabama Law.**

For the reasons addressed below, Defendants have misread the waiver provision upon which they rely. Defendants also fail to acknowledge the bases under Alabama law for a claim of minority oppression and squeeze-out in the context of an LLC.

> 1. The B&B Company Agreement Does Not Include a Waiver of Fiduciary Duties Owed by M. Murray to Bill Roberts in his Capacity as a Member of B&B Under Alabama Law.

Missing from Defendants' partial quotation of the waiver provision on which they rely is the language set forth in bold in the following complete quotation of that provision:

> [E]ach of the Members and the Company hereby waives any and all fiduciary duties that, absent such waiver, may be implied by any applicable Alabama law, ***and in doing so*, acknowledges and agrees that the duties and obligation of *each member of the Management Committee to each other and to the Company* are only as expressly set forth in this Agreement**. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a member of the Management Committee otherwise existing at law or in equity, are agreed by the Members to replace such other duties and liabilities of such member of the Management Committee.

5

B&B Agreement, § 5.1(g) (italics added for emphasis). <u>Compare</u> the Motion at 5 <u>quoting</u>, partially, § 5.1(g). The language omitted from Defendants' quotation of such provision clearly limits the extent of the waiver to only the duties and obligations of each member of the Management Committee to each other member thereof and to the Company.

Such limitation of the waiver renders it applicable only to certain fiduciary duties of a member of the Management Committee, namely, those owed to other members of such committee and the LLC itself, and not to those duties owed to LLC Members, as is plainly underscored by the final sentence of Section 5(g) quoted in full above. By including the limiting phrase "and in doing so," this waiver of fiduciary duties otherwise available under Alabama law, both statutory and as established by case law, does **not** include waiver of fiduciary duties owed by members of the Management Committee to the LLC Members, much less fiduciary duties owed by the majority and controlling Member of the LLC, here M. Murray, to the minority Member, here Roberts.

Had such delineation of waived fiduciary duties been intended as illustrative only, the use of "including but not limited to" or the like, in lieu of "in so doing," would have been necessary. As written, the waiver is properly construed in accordance with the maxim "*Expressio unius est exclusio alterius.*" Black's Law Dictionary (5th Ed. 1979) succinctly addresses the application of this maxim for the purpose of construing the waiver provision *sub judice*: "When certain ... things are specified in a law, contract, or will, an intention to exclude all others from its operation may be inferred. Under the maxim, if [a] statute [or an agreement] specifies an exception to a general rule or **assumes to specify the effects of a certain provision, other ... effects are excluded.**" Black's Law Dictionary at 521 (5th Ed. 1979) (emphasis added). <u>See</u> <u>Public Bldg. Auth. v. St. Paul Fire & Marine Ins.</u>, 80 So. 3d 171, 181 (Ala. 2010) (applying *expressio unius est exclusio alterius* in interpreting contract language and concluding that "a more restrictive boundary was

intended" for a provision); Ivey v. Estate of Ivey, 261 So. 3d 198, 212 (Ala. 2017) (applying *expressio unius est exclusio alterius* in interpreting statutory provision specifying two evidentiary bases for precluding a claim as excluding other, unspecified bases). Accordingly, M. Murray's fiduciary duties owed to Roberts himself, as a Member of the LLC, not on behalf of the LLC itself, as provided in statute and under case law, are the duties upon which Roberts' claims asserted in Counts One and Two of his Complaint are asserted and so viable.[2]

    2.    <u>Roberts has pleaded a viable claim for minority oppression/squeeze out against M. Murray under Alabama Law.</u>

In the absence of a waiver as addressed above, then by virtue of her direction and oversight of the Company's activities and affairs as the sole member of B&B's Management Committee, the duties owed by M. Murray to Roberts as a Member of the LLC, are partially outlined in Section 10A-5A-4.08, Ala. Code (1975 as amended). "This section provided a set of default fiduciary duties and obligations[,]" for persons who have the authority to direct and oversee the activities and affairs of the LLC. See Ala. Code (1975, as amended), § 10A-5A-4.08, comment. "[T]his section merely outlines the <u>basic</u> duties of such persons, <u>while opening the door to other duties which may be applicable through equitable and common law principles</u> … to establish the duties of members, agents and others to each other… ." Id. (emphasis added). Such basic duties include duties of "loyalty" and "care." Id., subsection (a)(1). The duty of "loyalty" includes but is not limited to "account[ing] to the limited liability company and to hold[ing] as trustee for it any property, profit or benefit derived by that person in the conduct … of the limited liability company's activities and affairs… ." Id., subsection (b)(1). The duty of "care" includes but is not limited to "refraining from engaging in <u>grossly negligent or reckless conduct, intentional</u>

---

[2] Roberts concedes that the above-quoted waiver provision does preclude his assertion of Count Five of the Complaint on behalf of B&B. Accordingly, he hereby withdraws such claim.

7

Case 19-80017-CRJ   Doc 17   Filed 05/30/19   Entered 05/30/19 10:37:36   Desc Main
Document      Page 7 of 15

misconduct, or a knowing violation of law." Id., subsection (d)(1) (emphasis added). Additionally, such duties and those imposed by the limited liability company agreement, as well as the exercise of any rights in directing and overseeing the company's activities and affairs shall be discharged consistently with the implied contractual covenant of good faith and fair dealing." Id., subsection (e)(1) (emphasis added).

Beyond such statutorily prescribed fiduciary duties are those recognized by Alabama courts, as synopsized in the Alabama Lawyer article cited by Defendants in the Motion. See Motion at 6, n. 6 citing Douglas B. Hargett & G. Bartley Loftin, III, Minority Oppression in Limited Liability Companies: The Birth of A New Claim or A Hole in the Law?, 77 Ala. Law. 36 (2016). "Alabama [appellate] courts have, on several occasions, allowed a direct cause of action for breach of fiduciary duty against majority or controlling LLC members by a minority member in cases where a claim for minority oppression[/squeeze out] could have been asserted but, for whatever reason, was not." See 77 Ala. Law. at 42, n. 27 and decisions cited therein.

For the reasons addressed in that same article, the decisions rendered by this Court in In re Dixie Pellets, LLC, AP No. 10-00014, 2010 Bankr. LEXIS 1742 (Bankr. N.D. Ala. June 9, 2010), and by the Alabama Supreme Court in DGB, LLC v. Hinds, 55 So. 3d 218 (Ala. 2010), each provide persuasive authority for this Court's denial of Defendants' Motion as assigned to Roberts' oppression/squeeze out claim against M. Murray. See 77 Ala. Law. at 40 (discussing Dixie Pellets) and 43 (discussing Hinds). In Dixie Pellets, this Court denied a motion to dismiss a direct claim by a minority member of an LLC against a controlling, majority member for squeeze out/oppression. 20 Bankr. LEXIS 1742, *14 – *17.

In Hinds, the Alabama Supreme Court upheld the dismissal of a squeeze out/oppression claim brought by minority members of an LLC because, in their brief on appeal, those members

8

failed to provide *citations* of authority in support of such claim, not on an absence of authority supporting recognition of the viability of such claim. 55 So. 3d at 233 *citing* Rule 28(a)(10), Ala. R. App. P. See id. quoting Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So. 2d 1, 9 (Ala. 2007) ("[I]t is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.") Nevertheless, Hinds provides further support for a minority oppression/squeeze out claim in the context of an LLC. In Hinds, the Alabama Supreme Court reversed the trial court's dismissal of a breach of fiduciary duty claim brought by the minority members against the majority, controlling member based on indicia exemplary of those upon which oppression and squeeze out claims brought by minority business owners have been upheld. See 77 Ala. Law at 43 (discussing Hinds). "The language used to explain the fiduciary and confidential relationship between majority and minority LLC members in Hinds is virtually identical to the 'specific type' of fiduciary duty described in the long line of shareholder oppression cases beginning with Burt [v. Burt Boiler Works, Inc., 360 So. 2d 327 (Ala. 1978)]." Id. For this reason, Roberts has pleaded not only a claim for M. Murray's breach of her fiduciary duties but also a claim for minority oppression/squeeze out. There is no basis for requiring Roberts to choose one or the other.

**B.     Roberts has sufficiently alleged a Claim for Conspiracy (Count Three of the Complaint).**

Defendants' contention that Roberts has not sufficiently pleaded his conspiracy claim should be rejected for the reasons stated below.

9

1. <u>Roberts' tort claims are viable and properly serve as the basis of Roberts' conspiracy claim.</u>

Defendants concede that Counts One and Two of the Complaint assert tort claims: "... [Roberts] alleges two closely-related theories of <u>tort</u> liability against [M. Murray]: breach of fiduciary duty and minority oppression. In turn, these alleged <u>torts</u> serve as the basis of [Roberts'] conspiracy claim against [R. Murray]." Motion at 9 (emphasis added). For the reasons addressed above, those claims have not been waived in or barred by the B&B Agreement, but are viable.

2. <u>Roberts' conspiracy claim more than satisfies applicable pleading requirements.</u>

The conspiracy claim asserted by Roberts falls easily within the liberal pleading requirements allowed by Rule 8 of the Federal Rules of Civil Procedure, which requires only "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rule requires merely a short and plain statement of a claim showing that the pleader is entitled to relief, in order to give a defendant fair notice of what the claim is and the grounds upon which it rests. See e.g., <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957). The test is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence in support of the claims pleaded. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).

The cases relied upon by the Defendants are readily distinguishable from the case at hand. For example, the Motion cites <u>American Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283 (11th Cir. 2010), which relied upon the holding in and <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544 (2007). See Motion at 10. Both of those cases involved complaints that alleged *parallel conduct* accompanied by nothing more than a bare assertion of conspiracy. In its narrow decision, the <u>Twombly</u> court simply held that allegations of parallel conduct suggesting a conspiracy, without a factual context that would raise a *plausible* suggestion of a preceding agreement among the defendants, were insufficient to state a claim under the Sherman Act. See <u>Twombly</u>, 550 U.S. at 556-557

10

(explaining that plausible grounds "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement").

Roberts' conspiracy claim is much more than an allegation of parallel conduct. To the contrary, the Complaint alleges that M. Murray engaged in the underlying tort in concert with her spouse, R. Murray, who aided and abetted her by furnishing the funds for her capital contributions and loans to B&B, while obtaining preferential payments from B&B classified as loan balance and capital account balance reductions for M. Murray. See Complaint, ¶ 22. The Complaint further alleges, *inter alia*, that R. Murray was complicit in the financial mismanagement of B&B and, acting in conspiracy with M. Murray, made and funded loans to B&B with the intention of wrongfully diluting Roberts' interest in the company. See Complaint, ¶ 22, 26.

The Defendants further rely on Mann v. Palmer to support their argument that courts "do not have to take as true" allegations made "upon information and belief." 713 F.3d 1306, 1315 (11th Cir. 2013). However, the plaintiff in Mann, who was seeking a stay of execution, alleged "upon information and belief" that "the supply of pentobarbital possessed by Florida is *either* expired, illegally obtained, *or* compounded pentobarbital." Id. (emphasis added). The court refused to take such allegation as true on the basis that the allegation was made without enough facts to make it plausible – and not, as Defendants misleadingly argue,[3] merely because the allegations were preceded by the words "upon information and belief." Id. Unlike Mann, Roberts'

---

[3] Defendant argue that because Roberts' factual allegations in support of his conspiracy claim were "upon information and belief" such prefatory language renders them "legal conclusions masquerading as facts." Motion at 10. However, in Solvay Specialty Polymers United States v. Zhenguo Liu, the defendant's counsel made the same argument and while the Solvay court agreed that "mere conclusory allegations unsupported by factual pleadings will not prevent dismissal," it rejected the defendant's argument and held that the plaintiff provided sufficient factual detail to support its plausible allegations made "upon information and belief." 2019 U.S. Dist LEXIS 77095, *12 (N.D. Ga. 2019).

11

conspiracy count does not posit alternative possibilities, but instead provides more than enough facts that render it more than plausible. See id.

Defendants also mistakenly rely on Fullman v. Graddick, 739 F.2d 553 (11th Cir. 1984), for the proposition that courts should dismiss complaints containing "conclusory, vague and general…allegations of conspiracy." Again, this is true only when such allegations are unsupported by any factual context. See e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 556; In re Dixie Pellets, LLC, AP No. 10-00014, 2010 Bankr. LEXIS 1742, *12 (Bankr. N.D. Ala. June 9, 2010).[4] In a more recent case, the U.S. District Court for the Northern District of Alabama explained that even though Fullman appears to stand for the proposition that conspiracy allegations are subject to a heightened pleading standard, the United States Supreme Court has since rejected that proposition, holding that courts have no authority to create exceptions to the "simplified pleading standard" imposed by the Federal Rules of Civil Procedure. N. Jackson Pharm., Inc. v. Express Scripts, Inc., 345 F. Supp. 2d 1279, 1278 (N.D. Ala. 2006) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)). The District Court further explained that since notice pleading is all that is required, rarely will a motion to dismiss for failure to state a claim be granted "unless it appears beyond doubt that the plaintiff can prove set of facts in support of his claim which would entitle him to relief," which is particularly true "where the proof and details of the alleged conspiracy are largely in the hands of the alleged co-conspirators," as is the case here, where M. Murray has restricted Roberts' access to B&B records. Id.

Moreover, "it would be both inequitable and irreconcilable with the liberal pleading rules in federal court to dismiss a conspiracy claim for failure to plead intricacies of that conspiracy that

---

[4] In Dixie Pellets, this Court also denied a motion to dismiss a conspiracy claim, in addition to the minority members' squeeze out/oppression claim. 210 Bankr. LEXIS 1742, *20.

are potentially unknowable to a plaintiff before discovery." Matthews v. Brookstone Stores, Inc., 2005 U.S. Dist. LEXIS 29004, *10 (S.D. Ala. 2005). Roberts' conspiracy allegations easily satisfy both the Fullman threshold and the pleading requirements under the Federal Rules of Civil Procedure. He has not only alleged that a conspiracy existed. Rather, he has also identified the participants in the conspiracy, the object of the conspiracy, and the means – to the extent known without the benefit of discovery -- by which is was accomplished. As such, Roberts' allegations "plainly set forth the nature of the conspiracy in sufficient detail to place defendants on notice of the claim, to enable them to respond and defend themselves in a meaningful way, and to comport with Eleventh Circuit pleading standards." Id. Any lack of detail complained of by the Defendants as to the minutiae of the conspiracy is not grounds for a 12(b)(6) dismissal, but can be fleshed out through the discovery process.

C. **Roberts has Sufficiently Pleaded A Claim Under Alabama Code Section 10A-5A-4.09 For Wrongful Denial of Access to LLC Records.**

Defendants have provided no authority construing Section 10A-5A-4.09, Ala. Code (1975, as amended), or its predecessor statutory provision, that requires Roberts to prove, much less plead, as they assert in the Motion. Roberts has alleged that he was denied access to LLC records by M. Murray, though she communicated such denial (without explanation) through B&B's CPA. Compl., ¶ 20. As such, Roberts has stated a cognizable claim for violation of Section 10A-5A-4.09, just as the minority members of an LLC were held to have pleaded a viable claim under a predecessor statute, Section 10-12-15(b) (now repealed), for an LLC's outside counsel's refusal to provide access to LLC records on request. Fogarty v. Parker, Poe, Adams and Bernstein, LLP, 961 So. 2d 784, 793-94 (Ala. 2006) (denying motion to dismiss claim asserted pursuant to Section 10-12-15(b), Ala. Code (1975, as amended) (now repealed) against lawyers and law firm acting as agents of the LLC). See also Dixie Pellets, supra at *21 - *22 (denying motion to dismiss claim

13

asserted pursuant to 10-12-15(b), Ala. Code (1975, as amended) (now repealed), in action for minority oppression/squeeze out in the context of an LLC).

### III. CONCLUSION

For the reasons stated above, the Court should deny Defendants' Motion to Dismiss as to Counts One through Four of the Complaint.

                                          Respectfully submitted,

                                          */s/ John J. Callahan, Jr.*
                                          John J. Callahan, Jr.
                                          jcallahan@callahanpc.com

                                          */s/Lisa M. English*
                                          Lisa M. English
                                          lenglish@callahanpc.com

**OF COUNSEL:**

CALLAHAN PC
301 Washington Street, Suite 301
Huntsville, Alabama 35801
Telephone: (256) 382-5180
Facsimile: (256) 704-0165

                                          */s/Stuart M. Maples*
                                          Stuart M. Maples
                                          smaples@mapleslawfirmpc.com

**OF COUNSEL:**

MAPLES LAW FIRM, PC
200 Clinton Ave. West, Ste 1000
Huntsville, AL 35801
Telephone: (256) 489-9779
Facsimile: (256) 489-9720

                                          Attorneys for
                                          Plaintiff William Barrier Roberts

14

Case 19-80017-CRJ   Doc 17   Filed 05/30/19   Entered 05/30/19 10:37:36   Desc Main
Document      Page 14 of 15

## CERTIFICATE OF SERVICE

   I hereby certify that on May 30, 2019, I electronically filed the foregoing with the Court using the CM/ECF system, which will send the notice of the filing to all counsel of record, and electronic mail upon:

Richard Blythe
Bankruptcy Administrator
P.O. Box 3045
Decatur, AL 35602
Via email: richard_blythe@alnba.uscourts.gov

               /s/ *John J. Callahan, Jr.*
               Of Counsel